**15-1371, 15-1445**

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

◆◆◆

CORDIS CORPORATION,

*Plaintiff-Appellant,*

— v. —

UNITED STATES PATENT AND TRADEMARK OFFICE,
MICHELLE K. LEE, Director,
U.S. Patent and Trademark Office,

*Defendants-Appellees,*

ABBOTT LABORATORIES,

*Defendant-Cross-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
CASE NO. 1:12-cv-00075-AJT-IDD
JUDGE ANTHONY J. TRENGA

---

## BRIEF FOR DEFENDANT-CROSS-APPELLANT ABBOTT LABORATORIES

---

JEFFREY A. LAMKEN
ROBERT K. KRY
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000

MICHAEL A. MORIN
LATHAM & WATKINS LLP
555 11th Street, N.W.
Washington, D.C. 20004
(202) 637-2298

ANDREW J. VANCE
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 408-4465

*Attorneys for Defendant-Cross-Appellant
Abbott Laboratories*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## *Cordis Corporation v. Lee*

## Nos. 15-1371, 15-1445

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Abbott Laboratories certifies the following:

1.    The full name of every party or amicus represented by us is:

Abbott Laboratories

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

Abbott Laboratories

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us is:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

<u>Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.</u>:
Andrew J. Vance, Elizabeth D. Ferrill, Corinne M. LaGosh

<u>Latham & Watkins LLP</u>:  Michael A. Morin

<u>MoloLamken LLP</u>:  Jeffrey A. Lamken, Robert K. Kry


Dated:  June 22, 2015                             /s/ Michael A. Morin   
                                                    Michael A. Morin

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

JURISDICTIONAL STATEMENT ......................................................................4

ISSUES PRESENTED.........................................................................................4

STATEMENT OF THE CASE..............................................................................5

I.     Statutory Framework ...............................................................................5

       A.     The *Inter Partes* Reexamination Statute ...............................................5

       B.     Subpoena Authority in "Contested Cases" ...........................................7

       C.     The 2011 Amendments to the Patent Act ............................................9

II.    Cordis's Infringement Suits and the Related *Inter Partes* Reexaminations...........................................................................................10

       A.     Cordis's Infringement Suits ...............................................................11

       B.     The *Inter Partes* Reexaminations of Cordis's Patents.......................13

III.   Cordis's Attempts To Delay the Reexaminations by Seeking Discovery...............................................................................................16

       A.     Cordis's Prior Attempts To Submit Abbott's Confidential Documents to the PTO .......................................................................17

       B.     Cordis's APA Challenge to the PTO's Regulations ...........................19

       C.     The PTO's Denial of Cordis's Petition To Authorize Subpoenas ......19

       D.     This Court's Rejection of Cordis's Unauthorized Subpoenas ............22

       E.     The PTO's Denial of Cordis's Request for Case-Specific Rules .......24

       F.     The District Court's Ruling.................................................................27

SUMMARY OF ARGUMENT ..............................................................28

ARGUMENT ...................................................................................31

I.    Standard of Review..................................................................31

II.   The Court Lacks Jurisdiction Over This Appeal Because Cordis
      Cannot Show It Would Derive Any Benefit from the Case-Specific
      Rules It Seeks ........................................................................33

      A.    Any New Discovery or Disclosure Rules Would Not Apply
            Retroactively to Cases Like Cordis's That Are Already on
            Appeal..........................................................................34

      B.    The Case-Specific Rules Cordis Seeks Would Not Authorize
            Subpoenas Because They Would Not Make the Reexaminations
            a "Contested Case"..........................................................39

III.  Alternatively, the Court Should Affirm Based on the Merits of the
      PTO's Decision.......................................................................41

      A.    The PTO Correctly Ruled That the *Inter Partes* Reexamination
            Statute Prohibits Discovery ...............................................43

            1.    The PTO's Interpretation of the Statute Is Correct...................43

            2.    The PTO's Interpretation Is Entitled to Deference...................47

      B.    The PTO Rationally Concluded That Discovery and Disclosure
            Duties Should Not Be Imposed on a Case-by-Case Basis .................49

            1.    Agencies Have Broad Discretion Over Whether To
                  Proceed by Generally Applicable Rules Rather Than
                  Case-Specific Determinations....................................50

            2.    The PTO Rationally Concluded That the Availability of
                  Discovery Should Not Be Determined Case by Case...............52

            3.    The PTO Rationally Concluded That Disclosure Duties
                  Should Not Be Addressed Case by Case .................................54

IV.     The Court Should Decide This Appeal Based on the Arguments
        Abbott Presents Rather Than Further Delaying Resolution of the
        Dispute ........................................................................................................56

CONCLUSION ......................................................................................................61

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013) ...................... *passim*

*Am. Gas Ass'n v. FERC*, 912 F.2d 1496 (D.C. Cir. 1990) ............................... 30, 51

*Am. Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir. 2010) ..................... 59

*Automated Merch. Sys., Inc. v. Rea*, 45 F. Supp. 3d 526 (E.D. Va. 2014),
    *aff'd on other grounds*, 782 F.3d 1376 (Fed. Cir. 2015) ................................... 48

*Ballard Med. Prods. v. Wright*, 821 F.2d 642 (Fed. Cir. 1987) ............................ 11

*Bayer AG v. Carlsbad Tech., Inc.*, 298 F.3d 1377 (Fed. Cir. 2002) ...................... 49

*Bos. Scientific Corp. v. Johnson & Johnson Inc.*, 679 F. Supp. 2d
    539 (D. Del. 2010) ............................................................................... 12

*Bos. Scientific Corp. v. Johnson & Johnson Inc.*, 647 F.3d 1353
    (Fed. Cir. 2011) ........................................................................... 12, 14

*Bos. Scientific Scimed & Abbott Labs. v. Cordis Corp.*,
    Appeal No. 2014-008135, 2015 WL 883933 (P.T.A.B. Feb. 27, 2015) ........... 15

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ..................................... 36

*C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983) ................................... 4

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ....................................................... 30, 47, 48, 49

*Cooper Techs. Co. v. Dudas*, 536 F.3d 1330 (Fed. Cir. 2008) ............................... 48

*Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152
    (D.C. Cir. 2005) .................................................................................. 38

*Defenders of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374
    (4th Cir. 2014) .................................................................................... 32

*Dep't of Energy v. Hunt*, 798 F.2d 1421 (Temp. Emer. Ct. App. 1986) ................. 60

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .................................................................41

*Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380
(Fed. Cir. 2012).........................................................................................31

*El-Sheikh v. United States*, 177 F.3d 1321 (Fed. Cir. 1999)....................................34

*Falkner v. Inglis*, 448 F.3d 1357 (Fed. Cir. 2006)........................................................59

*FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775 (1978)............................50

*Gao v. Holder*, 595 F.3d 549 (4th Cir. 2010) ..........................................................50

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)...................................................37

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................*passim*

*Martin v. Hadix*, 527 U.S. 343 (1999) .......................................................................37

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ........................................................32, 37

*Miller v. Branch, Cabell & Co.*, 103 F.3d 118, 1996 WL 678385
(4th Cir. Nov. 25, 1996)............................................................................34

*Minesen Co. v. McHugh*, 671 F.3d 1332 (Fed. Cir. 2012) ..........................30, 42, 60

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995) ...................................36

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ...............................33

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983).....................................................................................32

*Myers Investigative & Sec. Servs., Inc. v. United States*,
275 F.3d 1366 (Fed. Cir. 2002) .............................................................33

*Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*,
883 F.2d 93 (D.C. Cir. 1989).....................................................................32

*Nat'l Small Shipments Traffic Conference, Inc. v. ICC*,
725 F.2d 1442 (D.C. Cir. 1984)...............................................................50

*In re NTP, Inc.*, 654 F.3d 1268 (Fed. Cir. 2011) .....................................................43

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177
(4th Cir. 2009)...................................................................32

*Oliva v. U.S. Dep't of Justice*, 433 F.3d 229 (2d Cir. 2005) ...................................43

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,
489 F.3d 1267 (D.C. Cir. 2007).........................................38

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999).........................................34

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v.
OpenBand at Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013).........................32

*SEC v. Chenery Corp*, 332 U.S. 194 (1947).......................................................50, 51

*Shays v. Fed. Election Comm'n*, 511 F. Supp. 2d 19 (D.D.C. 2007) ......................51

*Sheehan v. Doyle*, 529 F.2d 38 (1st Cir. 1976).........................................................8

*Shinyei Corp. of Am. v. United States*, 524 F.3d 1274 (Fed. Cir. 2008)..................59

*Shockley v. Arcan, Inc.*, 248 F.3d 1349 (Fed. Cir. 2001) ........................................36

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)........................................................49

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...................................33

*Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475
(4th Cir. 2003)...................................................................33

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276
(Fed. Cir. 2011) (en banc)...................................................55

*Trans-Pac. Freight Conference of Japan/Korea v.
Fed. Mar. Comm'n*, 650 F.2d 1235 (D.C. Cir. 1980).....................51, 52, 53, 55

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ...........................................48, 49

*United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878
(Fed. Cir. 1997)..................................................................37

*Wall v. Kreamer*, 41 U.S.P.Q.2d 2022, 1997 WL 243480
(Fed. Cir. Jan. 21, 1997) ...................................................59

*Waters v. Merit Sys. Prot. Bd.*, 101 F.3d 716, 1996 WL 663313
(Fed. Cir. Nov. 15, 1996) .................................................................. 34

*Wyeth v. Abbott Labs.*, No. 08-1021, 2012 WL 175023
(D.N.J. Jan. 19, 2012) ...................................................................... 13

*Wyeth v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013) ......................... 13

*ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576
(Fed. Cir. 1988) ................................................................................ 59

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. Art. III ............................................................ 2, 33, 34, 42

5 U.S.C. § 551 ......................................................................................... 40

5 U.S.C. § 551(4) .............................................................................. 25, 40

5 U.S.C. § 553(e) .................................................................................... 26

5 U.S.C. § 704 ......................................................................................... 42

5 U.S.C. § 706(2)(A) ........................................................................ 32, 42

35 U.S.C. § 2(b)(2) ................................................................................. 48

35 U.S.C. § 2(b)(2)(A) .............................................................................. 7

35 U.S.C. § 6(a) ...................................................................................... 44

35 U.S.C. § 23 ................................................................................ *passim*

35 U.S.C. § 24 ................................................................................ *passim*

35 U.S.C. § 132 ................................................................ 6, 20, 43, 44

35 U.S.C. § 133 ................................................................ 6, 20, 43, 44

35 U.S.C. § 134(c) .................................................................................... 8

35 U.S.C. § 135(a) .................................................................................... 8

35 U.S.C. § 135(c) .................................................................................... 9

35 U.S.C. § 301 ................................................................................5

35 U.S.C. § 311 ..............................................................................10

35 U.S.C. § 312(a) ...........................................................................5

35 U.S.C. § 313 ................................................................................5

35 U.S.C. § 314 .........................................................................43, 44

35 U.S.C. § 314(a) ................................................................... *passim*

35 U.S.C. § 314(b) ................................................................... *passim*

35 U.S.C. § 314(c) ................................................................... *passim*

35 U.S.C. § 315(a)(1) .......................................................................6

35 U.S.C. § 315(c) ............................................................................6

35 U.S.C. § 316(a) ............................................................................6

35 U.S.C. § 316(a)(5) ................................................................10, 46

35 U.S.C. § 317(b) .........................................................................6, 7

42 U.S.C. § 2182 ..............................................................................8

42 U.S.C. § 2457(d) ..........................................................................8

American Inventors Protection Act of 1999, Pub. L. No. 106-113,
    §§ 4601-4608, 113 Stat. 1501, 1501A-552, 1501A-567 to -572 (1999)
    (codified as amended at 35 U.S.C. §§ 311-318) ...................................5

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284
    (2011) (codified at 35 U.S.C. §§ 311-319) ..................................10, 46

37 C.F.R. § 1.104 ............................................................................44

37 C.F.R. § 1.182 ............................................................................48

37 C.F.R. §§ 1.902-.997 ...................................................................23

37 C.F.R. § 1.937(b) ....................................................................7, 44

37 C.F.R. § 1.947 ................................................................6, 45

37 C.F.R. § 11.18(b)(1) ............................................................54

37 C.F.R. § 11.18(b)(2)(iii) .......................................................54

37 C.F.R. § 11.18(b)(2)(iv) .......................................................54

37 C.F.R. § 41.2 ..................................................................8, 19

37 C.F.R. § 41.60 ................................................................8, 19

37 C.F.R. § 41.61 ....................................................................35

37 C.F.R. § 41.63(c) ............................................................6, 35

37 C.F.R. § 41.77 ....................................................................38

37 C.F.R. § 41.77(a) ................................................................38

37 C.F.R. § 41.77(b)(1) ............................................................35

37 C.F.R. § 41.151 ...................................................................8

37 C.F.R. § 41.156(a) ................................................................8

*Rules to Implement Optional Inter Partes Reexamination Proceedings*,
    65 Fed. Reg. 76,756 (Dec. 7, 2000) ...............................7, 20

*Rules of Practice Before the Board of Patent Appeals and Interferences*,
    68 Fed. Reg. 66,648, 66,650 (Nov. 26, 2003) ........................9

Manual of Patent Examining Procedure § 2682(IV) ....................38

Manual of Patent Examining Procedure § 2682(IV)(A) ...............39

## LEGISLATIVE MATERIALS

H.R. Rep. No. 112-98 (2011) ...............................................10, 46

145 Cong. Rec. H6944 (Aug. 3, 1999) .....................................5, 45

145 Cong. Rec. E1789-90 (Aug. 5, 1999) ....................................5

*Crossing the Finish Line on Patent Reform: What Can and Should Be Done: Hearing Before the Subcomm. on Intellectual Property, Competition, and the Internet of the H. Comm. on the Judiciary*, 112th Cong. 50-51 (Feb. 11, 2011) ................................................................................57

*Patent Quality Improvement: Post-Grant Opposition: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the H. Comm. on the Judiciary*, 108th Cong. 5 (June 24, 2004) ....................................9

*Review of Recent Judicial Decisions on Patent Law: Hearing Before the Subcomm. on Intellectual Property, Competition, and the Internet of the H. Comm. on the Judiciary*, 112th Cong. 53-54 (Mar. 10, 2011) .....................57

## OTHER AUTHORITIES

*Cook's Gianturco-Roubin Flex-Stent Is First Coronary Stent Approved by FDA*, The Gray Sheet, June 7, 1993, https://www.pharmamedtechbi.com/publications/the-gray-sheet/19/023/cooks-gianturcoroubin-flexstent-is-first-coronary-stent-approved-by-fda-distribution-to-begin-after .....................11

Ronald M. Levin, *The Case for (Finally) Fixing the APA's Definition of "Rule*," 56 Admin. L. Rev. 1077 (2004) ...........................................................40

Antonin Scalia, *Vermont Yankee: The APA, the D.C. Circuit, and the Supreme Court*, 1978 Sup. Ct. Rev. 345.............................................................41

U.S. Patent & Trademark Office, *Report to Congress on Inter Partes Reexamination* (2004) ...................................................................................9, 46

## <u>STATEMENT OF RELATED CASES</u>

No other appeal in or from the same proceeding before the district court was previously before this or any other appellate court, although this Court decided a closely related appeal in 2013.  *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013).  The following case may directly affect or be directly affected by the Court's decision in this case:  *Cordis Corp. v. Boston Scientific Scimed*, No. 15-1696 (Fed. Cir. docketed June 3, 2015).  There is no other case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## PRELIMINARY STATEMENT

For nearly a decade, Cordis has engaged in a series of delay tactics designed to put off resolution of its *inter partes* reexaminations while it pursues unfounded patent litigation against Abbott. Many of those attempts have been so devoid of legal merit that Cordis has resorted to telling lengthy stories about the alleged superiority of its drug-eluting stents rather than focusing on the legal issues at hand. The present case is a perfect example: Most of Cordis's brief has nothing to do with the legal issues in this appeal—indeed, many of its factual citations are to materials not even in the record. Those arguments are both irrelevant and wrong. The reality is that six of Cordis's drug-eluting stent patents from three different families have already been invalidated by this Court, and the remaining two at issue here stand rejected on literally dozens of grounds at the PTO.

Cordis has been doing everything it can to delay final resolution of those proceedings. Its strategy of choice has been a fruitless campaign to seek discovery in its *inter partes* reexaminations—even though discovery has never before been allowed in such proceedings, and even though its own parent company and counsel have previously admitted that discovery is prohibited. Those efforts have already been rejected numerous times—by this Court, by other courts, and by the PTO. This appeal represents Cordis's latest effort to beat that dead horse.

Cordis and the PTO debate whether the PTO's latest decision denying Cordis's petitions was "final agency action" reviewable under the Administrative Procedure Act. While that issue was the basis for the district court's decision below, this Court need not and should not address it. Deciding the appeal on that ground would only encourage Cordis to pursue its discredited theories yet again at some other time.

Instead, the Court should decide this appeal on the threshold ground that neither the district court nor this Court has subject-matter jurisdiction. To establish a case or controversy under Article III, a plaintiff must establish standing—including by showing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Cordis cannot make that showing here.

This Court already ruled in one of Cordis's earlier appeals that subpoenas are not available in *inter partes* reexaminations because the PTO's regulations do not provide for discovery. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1328 (Fed. Cir. 2013). Seeking to circumvent that ruling, Cordis asked the PTO to promulgate a case-specific discovery rule good for these reexaminations only. Cordis's fundamental problem, however, is that Cordis would not derive any benefit from its untimely request. Under well-established principles, any new rules the PTO promulgated would not apply to cases like Cordis's that are already on

appeal.  For that reason, Cordis cannot show that its injury would be redressed by the relief it seeks.

Alternately, the Court should decide this case based on the arguments raised in Abbott's cross-appeal.  Cordis's APA challenge lacks any semblance of merit. The PTO's interpretation of the *inter partes* reexamination statute to prohibit discovery was not only reasonable but correct.  And the PTO was well within its discretion to conclude that discovery and disclosure obligations should be addressed through general rulemaking rather than case-specific determinations.

There are compelling reasons to dispose of this case on those alternative grounds.  If the Court merely affirms the district court's ruling that the PTO's decision was not final, it will simply encourage Cordis to make its meritless arguments again in other proceedings.  Conversely, if the Court reverses but remands for further proceedings, it will consign Abbott to still more pointless litigation.  The only result will be additional delay—which has been Cordis's true goal all along.  As the PTO explained to the court below:  "Cordis has sought to delay proceedings through numerous lawsuits challenging the USPTO's discovery regulations and rulings."  JA3624.  "Cordis . . . seeks nothing more than to delay proceedings further, which appears to be one of Cordis' main objectives."  JA3636. This Court can and should address Abbott's arguments now, and put an end to this dispute once and for all.  Enough is enough.

## JURISDICTIONAL STATEMENT

The district court lacked subject-matter jurisdiction because Cordis failed to show that it was "'likely,' as opposed to merely 'speculative,' that [its] injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This Court has jurisdiction to resolve that threshold jurisdictional issue but otherwise lacks subject-matter jurisdiction for the same reason as the district court. *See C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877 (Fed. Cir. 1983) (court has "inherent jurisdiction to determine its own jurisdiction").

## ISSUES PRESENTED

1.     Whether this Court lacks subject-matter jurisdiction over this appeal because Cordis cannot show that it is likely, as opposed to merely speculative, that it will derive any benefit from the new case-specific rules it seeks.

2.     Whether the PTO's determination that the *inter partes* reexamination statute prohibits discovery was a correct—or at least reasonable—interpretation of the statute the PTO administers.

3.     Whether the PTO acted within its discretion by deciding that new discovery and disclosure obligations should be addressed through generally applicable rulemaking rather than case-specific determinations.

## STATEMENT OF THE CASE

## I.    STATUTORY FRAMEWORK

### A.    The *Inter Partes* Reexamination Statute

The American Inventors Protection Act of 1999 created an optional *inter partes* reexamination procedure.  Pub. L. No. 106-113, §§ 4601-4608, 113 Stat. 1501, 1501A-552, 1501A-567 to -572 (1999) (codified as amended at 35 U.S.C. §§ 311-318).[1]  Under that procedure, a third-party requester could ask the PTO to reexamine a previously issued patent based on prior art "patents or printed publications."  35 U.S.C. §§ 312(a), 301.  The PTO would order reexamination if it found a "substantial new question of patentability" (or, after September 16, 2011, a "reasonable likelihood" that a claim will be found invalid).  *Id.* §§ 312(a), 313.

Congress designed *inter partes* reexaminations to provide a faster, less costly alternative to litigation.  Congress wanted to "[r]esolve patent validity disputes more quickly and less expensively than litigation" by avoiding a process "resembling courtroom proceedings."  145 Cong. Rec. H6944 (Aug. 3, 1999) (Rep. Rohrabacher) (JA2414); *see also* 145 Cong. Rec. E1789-90 (Aug. 5, 1999) (Rep. Coble) (JA2423-24) (proceedings intended to "reduce expensive patent litigation").

To that end, Congress modeled *inter partes* reexaminations on existing examination procedures.  Section 314(a) of the Act provides that, "[e]xcept as

---

[1] Unless otherwise noted, citations to 35 U.S.C. §§ 311-318 are to the former code provisions of the *inter partes* reexamination statute that apply to this case.

otherwise provided in this section, reexamination shall be conducted according to the procedures established for initial examination under the provisions of sections 132 and 133." 35 U.S.C. § 314(a). Those "procedures established for initial examination" do not include subpoenas or discovery. *See* 35 U.S.C. §§ 132, 133.

Third-party requesters have a limited right to respond to a patent owner's submissions. 35 U.S.C. § 314(b). The statute imposes a strict 30-day deadline for those responses, which cannot be extended. *Id.*; 37 C.F.R. § 1.947. Absent good cause, moreover, all *inter partes* reexaminations must be "conducted with special dispatch." 35 U.S.C. § 314(c).

If the examiner finds a patent claim invalid, the patent owner may appeal to the Board and thereafter to the Federal Circuit. 35 U.S.C. § 315(a)(1). The record on appeal, however, is limited to the materials before the examiner:  With exceptions not relevant here, "[a]ffidavits or other evidence filed after the date of filing an appeal . . . will not be admitted." 37 C.F.R. § 41.63(c).

If a claim is found invalid and any appeals exhausted, the Director issues a certificate canceling the claim. 35 U.S.C. § 316(a). If a claim is found valid, the Director issues a certificate confirming it, and the third-party requester is estopped from asserting invalidity in further litigation or reexamination on any ground that was or could have been raised in the reexamination. *Id.* §§ 315(c), 316(a), 317(b). Where a patent is in both litigation and reexamination at the same time, and a final

decision is entered against the requester in litigation, any pending reexamination must be dismissed as moot. *Id.* § 317(b). Those rules create a natural incentive for patentees threatened with unfavorable reexamination decisions to delay the reexamination in the hope of obtaining a favorable judgment in litigation before the reexamination is complete.

The Patent Act authorizes the PTO to "establish regulations . . . govern[ing] the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2)(A). On December 7, 2000, the PTO promulgated rules implementing the *inter partes* reexamination statute. *Rules to Implement Optional Inter Partes Reexamination Proceedings*, 65 Fed. Reg. 76,756 (Dec. 7, 2000). Those rules likewise do not allow discovery. Consistent with the statute, they provide that *inter partes* reexaminations "will be conducted in accordance with . . . the application examination process." 37 C.F.R. § 1.937(b). Seeking to "minimize the costs and other effects of reexamination," the PTO rejected proposals for interviews and cross-examination, concluding that such procedures would "greatly extend the *inter partes* proceeding time line, . . . contrary to the 'special dispatch' required by 35 U.S.C. 314(c)." 65 Fed. Reg. at 76,756, 76,768-69.

### B.    Subpoena Authority in "Contested Cases"

Section 24 of the Patent Act has long authorized district court clerks to assist the PTO by issuing subpoenas to enforce PTO-approved discovery requests in

"contested cases."  35 U.S.C. §24; *Sheehan v. Doyle*, 529 F.2d 38, 39 (1st Cir. 1976).  Section 23 authorizes the PTO to "establish rules for taking affidavits and depositions."  35 U.S.C. §23.  The PTO has exercised that authority by issuing rules that closely control the use of subpoenas in contested cases.  It has decreed, for example, that "[a] party seeking to compel testimony or production of documents" in a contested case before the Board "must file a miscellaneous motion for authorization" with the PTO, describing the evidence sought and its relevance.  37 C.F.R. §41.156(a).  "Evidence that is not taken, sought, or filed in accordance with [that requirement] shall not be admissible."  *Id.* §41.151.

By its terms, §24 authorizes subpoenas only in "***contested case[s]*** in the Patent and Trademark Office."  35 U.S.C. §24 (emphasis added).  In 2004, the PTO issued rules making clear that *inter partes* reexaminations are ***not*** "contested cases."  Rule 41.60 states that "[a]n *inter partes* reexamination proceeding is ***not a contested case*** subject to subpart D" (the portion of the Board's rules governing contested cases).  37 C.F.R. §41.60 (emphasis added).  Rule 41.2 similarly states that "[a]n appeal in an *inter partes* reexamination is not a contested case."  *Id.* §41.2.  The PTO explained:

> The phrase "contested case" would include patent interferences (35 U.S.C. 135(a)) and proceedings with interference-based procedures (42 U.S.C. 2182 and 2457(d)).  ***The existence of a contested case is a predicate for authorizing a subpoena under 35 U.S.C. 24.***  Although both appeals in inter partes reexaminations under 35 U.S.C. 134(c) and some petitions to the Chief Administrative Patent Judge, such as a

petition for access under 35 U.S.C. 135(c), may involve more than one party, ***they are not considered contested cases*** for the purposes of proposed part 41.

*Rules of Practice Before the Board of Patent Appeals and Interferences*, 68 Fed. Reg. 66,648, 66,650 (Nov. 26, 2003) (emphasis added).

### C.     The 2011 Amendments to the Patent Act

Consistent with its view that *inter partes* reexaminations do not permit discovery, the PTO reported to Congress in 2004 that "the lack of such procedural mechanisms as discovery and cross-examination" had "apparently resulted in challengers being unwilling to invoke" the process.  U.S. Patent & Trademark Office, *Report to Congress on Inter Partes Reexamination* 4 (2004) (JA2431); *see also Patent Quality Improvement: Post-Grant Opposition: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the H. Comm. on the Judiciary*, 108th Cong. 5 (June 24, 2004) (PTO General Counsel James A. Toupin) (JA2445) (noting that "a third party cannot conduct discovery"); *id.* at 2 (Rep. Boucher) (JA2442) ("No cross-examination of witnesses is permitted . . . ."). The PTO urged Congress to enact legislation authorizing a new procedure—"a genuinely contested case presided over by panels of USPTO administrative patent judges" with "[c]losely controlled discovery and cross-examination." *Report to Congress*, *supra*, at 8 (JA2434).

Years later, in September 2011, Congress enacted the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (codified at 35 U.S.C. §§ 311-319). That Act replaces *inter partes* reexamination with a new procedure named "inter partes review." Current 35 U.S.C. § 311. That new procedure permits limited discovery subject to PTO-prescribed "standards and procedures." Current 35 U.S.C. § 316(a)(5). Even in those new proceedings, however, discovery is tightly constrained: The Act limits discovery to "the deposition of witnesses submitting affidavits or declarations" or other matters the PTO deems "necessary in the interest of justice." *Id.*

By establishing *inter partes* review, Congress sought to "convert[ ] inter partes reexamination from an examinational to an adjudicative proceeding." H.R. Rep. No. 112-98, at 46 (2011) (A2512). Congress specifically identified the availability of "[d]iscovery" as a departure from current law. *Id.* at 47 (A2513). Congress, however, chose not to apply those new discovery procedures to pending *inter partes* reexaminations. *See* Pub. L. No. 112-29, § 6(c)(3)(C), 125 Stat. at 305 (prior law "continue[s] to apply to requests for inter partes reexamination that are filed before the [statute's] effective date").

## II. CORDIS'S INFRINGEMENT SUITS AND THE RELATED *INTER PARTES* REEXAMINATIONS

This case centers around technology for drug-eluting coronary stents. Cordis claims that it revolutionized that field, in a brief rife with citations to news

stories and other documents that were never submitted to the court below. *See, e.g.*, Cordis Br. 4-5 & nn.9-11, 6 & n.13. Those claims are as irrelevant as they are inaccurate and misleading. *See Ballard Med. Prods. v. Wright*, 821 F.2d 642, 643 (Fed. Cir. 1987) ("An appellate court may consider only the record as it was made before the district court.").[2]

The actual administrative record in this APA action tells a very different story. Both the courts and the PTO have repeatedly rejected Cordis's patents, finding them invalid on numerous grounds.

### A.    Cordis's Infringement Suits

In 2007, Cordis began filing a series of infringement suits against Abbott in the U.S. District Court for the District of New Jersey, alleging that Abbott's renowned Xience V Everolimus Eluting Coronary Stent System infringed Cordis's patents. Cordis initially filed four suits alleging infringement of four patents from

---

[2] The deficiencies in Cordis's account are almost too numerous to list. For example, Cordis spends much of its brief touting its so-called "Cypher" stent, which supposedly "revolutionized" the field. Cordis Br. 3. The Cypher stent, however, ***does not practice the patents at issue***—as Cordis all but admits. *See* Cordis Br. 14 (asserting only that Cordis developed the polymer coatings claimed in the patents at issue "***[c]oncomitant with*** the development of the Cypher® stent" (emphasis added)). To take another example, the very first sentence of Cordis's introduction states that Cordis was the first company to obtain FDA approval for a coronary stent. Cordis Br. 3. That is wrong: The FDA had approved another coronary stent a year earlier. *See Cook's Gianturco-Roubin Flex-Stent Is First Coronary Stent Approved by FDA*, The Gray Sheet, June 7, 1993, https://www.pharmamedtechbi.com/publications/the-gray-sheet/19/023/cooks-gianturcoroubin-flexstent-is-first-coronary-stent-approved-by-fda-distribution-to-begin-after.

its Wright and Falotico families. *See Cordis Corp. v. Abbott Labs.*, Nos. 07-2265, 07-2477, 07-2728, 07-5636 (D.N.J.). In 2008, Cordis filed two more suits alleging infringement of its Morris patents. *See Wyeth v. Abbott Labs.*, Nos. 08-0230, 08-1021 (D.N.J.). In 2009, Cordis filed a seventh suit alleging infringement of one of its Llanos patents, and in 2010, it added claims alleging infringement of a second Llanos patent. *See Wyeth v. Abbott Labs.*, No. 09-4850 (D.N.J.).

On January 20, 2010, in parallel litigation between Cordis and Boston Scientific Corp., the U.S. District Court for the District of Delaware invalidated Cordis's four Wright and Falotico patents. *See Bos. Scientific Corp. v. Johnson & Johnson Inc.*, 679 F. Supp. 2d 539, 544-55 (D. Del. 2010). This Court affirmed, holding that "no reasonable juror could determine that the asserted claims of the patents-in-suit contain adequate written description." *Bos. Scientific Corp. v. Johnson & Johnson Inc.*, 647 F.3d 1353, 1369 (Fed. Cir. 2011). "The patent laws," the Court noted, "do not reward an inventor's invitation to other researchers to discover which of the thousands of . . . analogs of rapamycin could conceivably work in a drug-eluting stent." *Id.* at 1367.

On January 27, 2010, the New Jersey district court ruled that the Delaware judgment was entitled to collateral estoppel effect in Cordis's infringement suits against Abbott. JA2516. The court accordingly entered judgment against Cordis on all of its Wright and Falotico suits. *Id.*

12

In the Morris actions, the New Jersey court granted summary judgment of invalidity on January 19, 2012. *See Wyeth v. Abbott Labs.*, No. 08-1021, 2012 WL 175023 (D.N.J. Jan. 19, 2012). This Court again affirmed. *See Wyeth v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013). The patents, it ruled, "disclose[d] only a starting point for further iterative research." *Id.* at 1386.

Cordis's suits for infringement of the two Llanos patents remain pending. On February 7, 2012, however, the New Jersey court stayed that litigation pending the outcome of Abbott's requests for *inter partes* reexamination discussed below. Dkt. 235 in No. 09-4850 (D.N.J. Feb. 7, 2012).

## B.    The *Inter Partes* Reexaminations of Cordis's Patents

Abbott responded to Cordis's infringement suits by requesting *inter partes* reexamination of several of Cordis's patents. *See* Inter Partes Reexamination Control Nos. 95/001,095, 95/001,096, 95/001,097, and 95/001,102 (filed Oct. 24, 2008) (Wright and Falotico patents); Inter Partes Reexamination Control No. 95/000,552 (filed June 14, 2010) (merged with No. 95/000,542 (filed April 15, 2010)) and No. 95/000,567 (filed Aug. 23, 2010) (Llanos patents). The PTO has repeatedly rejected Cordis's patent claims on numerous grounds.

In the four Wright and Falotico reexaminations, the PTO examiners issued numerous final rejections with respect to all of Cordis's claims. *See, e.g.*, Right of Appeal Notice, Control No. 95/001,102 (Mar. 2, 2011). Following this Court's

invalidity ruling in the *Boston Scientific* case, the PTO terminated the reexaminations. JA2522, 2526, 2530, 2533-34.

Cordis has been similarly unsuccessful in the Llanos reexaminations. The PTO examiner rejected all of Cordis's claims in the '542/'552 reexamination based on forty-five different prior art combinations, each of which applied to some or all of the claims. JA293-391, 2563-64, 2675-77. The examiner also cited numerous prior Cordis admissions corroborating those rejections. JA2657, 2664, 2666, 2668-69. A different examiner rejected all of Cordis's claims in the '567 reexamination based on thirty-six different prior art combinations, again corroborated by Cordis's own prior admissions. JA2570-91, 3530, 3538, 3546-47, 3550, 3552, 3568.

In the course of those reexaminations, Cordis submitted expert testimony, extensive documentary evidence, and argument directed to supposed secondary considerations. *See, e.g.*, JA228-29, 1062-63, 2669-75, 3554-67. Those submissions included baseless assertions that Abbott had copied Cordis's products—accusations supported only by the conclusory allegation of a technical expert. JA228, 1062. Both examiners considered all of those submissions and independently concluded that they lacked merit. JA2669-75, 3554-67. Among other things, the examiners noted that, because the purportedly novel feature of the invention and its advantages were already known in the prior art, any secondary

considerations attributable to that feature could not constitute evidence of non-obviousness.  JA2670-71, 2674-75, 3556-57, 3561-62, 3564.  The examiners also found that Cordis's secondary-consideration arguments were contradicted by the very documents Cordis had submitted.  JA2671-72, 2674, 3556, 3561, 3563-64, 3566.  The examiners issued final appealable decisions in the two reexaminations on July 20, 2012 and April 12, 2013.  JA2594-97, 3471-73.

On February 27, 2015, after the decision under review here, the Patent Trial and Appeal Board unanimously affirmed the examiner's decision in the '542/'552 reexamination.  *See Bos. Scientific Scimed & Abbott Labs. v. Cordis Corp.*, Appeal No. 2014-008135, 2015 WL 883933 (P.T.A.B. Feb. 27, 2015).  The Board agreed with the examiner that Cordis's so-called invention was merely a predictable combination of elements already well known in the prior art.  It was undisputed that the prior art combinations taught all the elements of Cordis's claims.  *Id.* at *4-6.  And "one of ordinary skill in the art would have found it obvious to have employed [those references] for their known and expected properties."  *Id.* at *6.  The Board found multiple reasons to combine the references, and cited Cordis's prior admissions as further corroborating the rejections.  *Id.* at *6-10 & n.7.  And like the examiners, the Board also rejected Cordis's secondary-consideration arguments on several grounds.  *Id.* at *10-14.

Cordis has appealed the Board's decision to this Court. *See Cordis Corp. v. Boston Scientific Scimed*, No. 15-1696 (Fed. Cir. docketed June 3, 2015). Meanwhile, Cordis has also appealed the examiner's final rejections in the '567 reexamination; that appeal is pending before the Board. *See* Appeal No. 2015-005072 (P.T.A.B. docketed Apr. 15, 2015).

## III.  CORDIS'S ATTEMPTS TO DELAY THE REEXAMINATIONS BY SEEKING DISCOVERY

Confronted with those unfavorable decisions from the PTO, Cordis has engaged in a series of maneuvers designed to delay resolution of its *inter partes* reexaminations while it pursues its infringement litigation against Abbott.  In particular, Cordis has filed numerous petitions at the PTO and related legal challenges seeking discovery in its reexaminations.  Those challenges have been uniformly rejected by the PTO and the courts, but have nonetheless substantially delayed resolution of the proceedings.[3]

---

[3] The centerpiece of Cordis's discovery demands has been its baseless "copying" allegation and its speculation that documents produced in the New Jersey litigation may be relevant to that theory or to other alleged secondary considerations. JA631-43.  Cordis, however, admits that "neither Cordis nor its counsel in the Reexaminations are aware of what was found in the litigation-related discovery"— effectively conceding that its discovery demands are a fishing expedition.  Cordis Br. 6.

## A.    Cordis's Prior Attempts To Submit Abbott's Confidential Documents to the PTO

In the New Jersey litigation, Cordis and Abbott agreed to stipulated protective orders that expressly limit the use of discovery materials to the proceedings in court.  JA2692-93, 2708-09, 2728.  Those orders thus prohibit Cordis from submitting Abbott's confidential discovery materials to the PTO.  The protective orders also include "prosecution bars" that prohibit individuals receiving confidential documents from being regularly involved in patent prosecution in the stent field for a one-year period.  JA2697, 2713, 2732.  Those provisions thus prohibit Cordis's counsel in the Llanos reexaminations from having access to Abbott's confidential documents produced in the New Jersey litigation.

Despite agreeing not to submit Abbott's confidential documents to the PTO, on July 1, 2009, Cordis asked the PTO to suspend the Wright and Falotico reexaminations so it could obtain the New Jersey court's permission to do precisely that.  JA2738-39.  The PTO refused.  JA2743.  Observing that "all reexamination proceedings are to be conducted with special dispatch," the PTO ruled that Cordis had "not met its burden of showing good cause as to why [the] proceeding should be temporarily stayed."  JA2742-43.  "[G]ranting of stays based upon on-going litigation," the PTO added, "would eviscerate the statute for litigated patents, since such stays would effectively guarantee that the litigations

would finish before the reexamination, thus effectively terminating the reexaminations mid-course and rendering them moot." JA2742.

Cordis then repeatedly asked the PTO for extensions of time while it sought the New Jersey court's permission. JA2752, 2756. The PTO refused, explaining: "There is no valid reason for granting an extension of time . . . . [I]t is the Office's statutory duty to conduct reexamination proceedings with special dispatch. Granting an indefinite extension of time would not serve this purpose and would only serve to slow proceedings." JA2756.

On April 21, 2010—almost a year after the issue first arose—Cordis finally asked the New Jersey court to modify the Wright and Falotico protective orders so it could submit Abbott's confidential documents to the PTO. JA2745. The court denied Cordis's request on July 20, 2010, ruling that it was "untimely." JA2746. Cordis then filed yet another petition in the reexaminations, asking the PTO to suspend the proceedings for the *entire duration* of the New Jersey litigation due to its inability to submit Abbott's confidential documents. JA2764-65. The PTO denied that request too. JA2766.[4]

---

[4] Throughout those proceedings, Abbott also objected to the submission of its confidential documents in the reexaminations on the ground that submission would render them public under the PTO's rules. JA2959-60. The PTO confirmed that understanding in response to another Cordis petition, ruling that any confidential Abbott information submitted by Cordis in support of patentability

### B.    Cordis's APA Challenge to the PTO's Regulations

On February 4, 2011—almost a year after the Llanos reexaminations began—Cordis sued the PTO and its Director in the U.S. District Court for the Eastern District of Virginia under the Administrative Procedure Act ("APA"), seeking authority to take discovery in those reexaminations. JA2769-71. Cordis admitted that the PTO's rules prohibited discovery. JA2771; *see also* JA2786 (acknowledging that the rules "very clear[ly] . . . preclude parties to *inter partes* reexamination procedures from invoking the subpoena mechanism provided by Congress in 35 U.S.C. § 24"). But Cordis asserted that the rules were invalid because the prohibition on discovery was arbitrary, capricious, and otherwise unlawful. JA2771.

On September 16, 2011, the district court ruled that Cordis's suit was untimely, without reaching the parties' remaining arguments. JA2812-13. Cordis appealed, but subsequently withdrew its appeal. JA2819-20.

### C.    The PTO's Denial of Cordis's Petition To Authorize Subpoenas

On October 5, 2011, several weeks after the dismissal of its APA challenge, Cordis served subpoenas on Abbott, Boston Scientific, and two of their experts, seeking the same discovery that it had previously argued was prohibited by PTO Rules 41.2 and 41.60. JA631-43. Two days later, ***after*** serving the subpoenas and

_____

would not be given "any special status" and would "be made of [public] record in the file." JA2973.

notwithstanding its prior acknowledgment that the PTO's rules prohibited them, Cordis filed petitions with the PTO Director asking him to "confirm" the opposite: that discovery is allowed and that the PTO's rules did not require Cordis to obtain permission before serving its subpoenas.  JA622, 628, 1199, 1205.  Alternatively, Cordis asked the PTO to grant such permission.  JA622, 1199.

On December 7, 2011, the PTO denied Cordis's petitions.  JA748-54, 1216-22.  "[D]iscovery in an *inter partes* reexamination proceeding," the PTO ruled, "is not permitted by the *inter partes* reexamination statute, or by any regulation governing *inter partes* reexamination proceedings."  JA753.

Section 314(a), the PTO explained, requires *inter partes* reexaminations to be "'conducted according to the procedures established for initial examination under the provisions of sections 132 and 133.'"  JA750 (quoting 35 U.S.C. § 314(a)).  And "35 U.S.C. 132 and 133, which govern initial examination, do not provide for a discovery practice."  *Id.*  The PTO noted that "'the intent of reexamination is to start over and reexamine the patent and examine new and amended claims as they would have been examined in the original application of the patent.'"  *Id.* (quoting 65 Fed. Reg. 76,756, 76,763 (Dec. 7, 2000)).

The PTO also relied on the strict statutory deadlines in § 314(b).  "The fact that Congress required the third party requester to file written comments within a thirty-day period provides evidence that Congress did not intend to authorize

discovery practice in *inter partes* reexamination proceedings." JA750-51. "[I]t would be impracticable, if not impossible, for the parties to conduct discovery, for the court to resolve any discovery disputes, and for the third party requester to prepare and submit its written comments within the thirty-day period set by statute." JA750.

The PTO also relied on § 314(c)'s requirement that *inter partes* reexaminations be "conducted with 'special dispatch.'" JA751 (quoting 35 U.S.C. § 314(c)). "Any provision for discovery would necessarily prolong proceedings before the Office," the PTO noted, and "the statutory requirement for special dispatch clearly provides evidence that Congress did not contemplate discovery for *inter partes* reexamination proceedings." *Id.*

The PTO observed that "[t]he legislative history makes no mention of discovery, and consistently expresses a concern for providing a low-cost, efficient alternative to litigation." JA751. Since the statute was enacted, moreover, "the public and the Office [have] understood that discovery was not available." JA752. Finally, the 2011 amendments replacing *inter partes* reexamination with a new procedure that does include discovery "confirm[] that Congress intended to provide discovery where none had previously been available." *Id.*

While ruling that the *inter partes* reexamination statute prohibits discovery, the PTO also relied on a second and independent ground to deny relief. Section

21

24, the PTO noted, authorizes subpoenas only in "contested cases within the Patent and Trademark Office." JA753. And the PTO concluded that "an *inter partes* reexamination proceeding is not a contested case" within the meaning of that provision. JA753 & n.2.

On January 26, 2012, Cordis filed this APA action in the U.S. District Court for the Eastern District of Virginia, seeking review of the PTO's decision. JA4.

### D.    This Court's Rejection of Cordis's Unauthorized Subpoenas

Meanwhile, Abbott had moved in the U.S. District Court for the Eastern District of Virginia to quash the subpoenas that Cordis had served without PTO authorization. On December 9, 2011, two days after the PTO's decision denying Cordis's petitions, Magistrate Judge Anderson granted the motion to quash. JA2841. Judge Anderson agreed with the PTO that the *inter partes* reexamination statute prohibits discovery. Section 314(a), he noted, provides that "the reexamination should be conducted in accordance with the procedures established for initial examination under 132 and 133." JA2840. And "with only very limited, . . . little things around the edges, . . . that certainly is interpreted to read that you are not going to have discovery." *Id.*

Judge Anderson also agreed that *inter partes* reexaminations are not "contested cases" within the meaning of § 24. He "acknowledge[d] that the parties sit on other sides of the table and that there is the ability to respond to

information."  JA2841.  But "a contested case in the context of the PTO is significantly more than that."  JA2840-41.[5]  District Judge Hilton affirmed that ruling "based on the sound reasoning of the Magistrate Judge."  JA2845.

This Court affirmed in *Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013).  To interpret the term "contested case," the Court consulted the text, legislative history, and contemporaneous interpretation of §24 at length.  *Id.* at 1322-26.  Based on that review, the Court concluded that "35 U.S.C. §24 only empowers a district court to issue subpoenas for use in a proceeding before the PTO if ***the PTO's regulations authorize parties to take depositions for use in that proceeding***."  *Id.* at 1328 (emphasis added).

"The PTO's regulations for inter partes reexaminations," the Court observed, "make no provision for either party to take depositions."  710 F.3d at 1327 (citing 37 C.F.R. §§1.902-.997).  "The PTO's regulations indeed specifically exclude appeals of inter partes reexaminations . . . from the category of Board proceedings in which depositions are allowed by defining such proceedings as not being 'contested cases.'"  *Id.*  Because "[t]he PTO's regulations . . . do not permit parties to take depositions in inter partes reexaminations," the Court held, "section 24 subpoenas are not available in such proceedings."  *Id.*

_____

[5] Judge Anderson also expressed "significant concern" that, if discovery were allowed, Abbott's confidential documents would become public.  JA2841.

23

The Court rejected Cordis's argument that the PTO's construction of the statute raised serious constitutional concerns. "[T]he basic rights of notice and an opportunity to be heard have been afforded." 710 F.3d at 1328. And the Court "d[id] not believe that, under the facts of this case, excluding compulsory production of testimony in inter partes reexamination proceedings raises a 'serious constitutional problem[].'" *Id.*

Because this Court resolved the appeal on the ground that *inter partes* reexaminations are not "contested cases" within the meaning of §24, the Court did not reach the alternative ground relied upon by the district court and the PTO— namely, that the *inter partes* reexamination statute itself prohibits discovery.

### E.    The PTO's Denial of Cordis's Request for Case-Specific Rules

The district court hearing Cordis's APA action had stayed those proceedings pending this Court's decision on the motion to quash. JA46-47. Once this Court decided that appeal, the district court lifted the stay and remanded the case to the PTO. JA55. Almost a month later, on June 12, 2013, Cordis filed supplemental submissions with the PTO asking it to reconsider its prior rulings denying Cordis's petitions for discovery. JA755, 767, 1251, 1262. "The PTO's prior view that subpoenas 'are not permitted by the *inter partes* reexamination statute,'" Cordis asserted, "is inconsistent with the Federal Circuit's holding that subpoenas are

available under 35 U.S.C. § 23 in any case in which the Director, by rule, has authorized the taking of a deposition." JA756.

Cordis did not explain how this Court's interpretation of "contested case" in § 24 had any bearing on the separate question of whether the *inter partes* reexamination statute prohibits discovery—the PTO's alternative ground for denying relief. Nonetheless, Cordis claimed that the PTO could supply the "regulation" this Court deemed necessary to a "contested case" by promulgating a case-specific rule authorizing discovery solely in this one case. JA756. The Administrative Procedure Act, Cordis noted, "defines 'rule' . . . to mean 'an agency statement of general or particular applicability.'" *Id.* (citing 5 U.S.C. § 551(4)). Cordis therefore urged the PTO—for the first time ever in these proceedings—to adopt a case-specific rule imposing discovery obligations on Abbott. *Id.* Cordis also requested another case-specific rule imposing a special duty of disclosure on Abbott—a duty that would require Abbott to submit to the PTO the same materials Cordis was seeking through discovery. JA765-66.

The PTO denied Cordis's requests. JA799-803, 1282-85, 3768-72, 3775-78. Cordis, the PTO explained, "mischaracterizes the Federal Circuit's decision." JA3770. That decision did not "suggest[] that the Office misinterpreted the *inter partes* reexamination statute." *Id.* Rather, it was "silent as to whether the Office is authorized under the *inter partes* reexamination statute to permit discovery." *Id.*

25

"Because there are no Office regulations permitting the taking of depositions in *inter partes* reexamination proceedings, and, for this reason, subpoenas under 35 U.S.C. 24 are not available in *inter partes* reexamination proceedings, the Federal Circuit had no need to address whether such regulations would be authorized specifically by the *inter partes* reexamination statute." *Id.* The PTO therefore reaffirmed its long-held view that "discovery in an *inter partes* reexamination is not permitted by the *inter partes* reexamination statute." JA3771.

The PTO also separately ruled that, "[e]ven if, arguendo, the Office has that authority [to allow subpoenas in *inter partes* reexaminations], the Office does not believe that rules regarding discovery and the duty of candor in *inter partes* reexaminations should be adopted through case-by-case adjudication." JA3771. The PTO gave two reasons. First, "in case-by-case adjudication, the Office will only have the input of two parties." *Id.* And second, "the Office believes, based on its experience and expertise, that it is impractical and unfair to participants to set rules for *inter partes* reexamination proceedings on an *ad hoc* basis." *Id.*[6]

---

[6] After the PTO denied Cordis's request—the decision that forms the basis for this appeal—Cordis continued to file **even more** petitions with the PTO. On August 1, 2014, Cordis filed petitions to stay the Llanos reexaminations indefinitely so it could pursue another petition for discovery, this time under 5 U.S.C. § 553(e). *See* Patent Owner's Stay Petition, Control No. 95/000,552 (Aug. 1, 2014). And on January 15, 2015, Cordis filed a petition with the Chief Administrative Patent Judge seeking permission from the Board hearing its appeal to take discovery. *See* Patent Owner's Petition for the Chief Administrative Patent Judge's Exercise of

### F.     The District Court's Ruling

Cordis then filed an amended complaint in its APA action challenging the PTO's latest rulings.  JA71.  Abbott intervened and moved for summary judgment. JA1286; JA2355-56.  Cordis, it urged, lacked standing to challenge the PTO's decision because Cordis could not show it would derive any benefit from the case-specific rules it sought:  The records in Cordis's reexaminations were already closed, and the cases were proceeding on appeal.  JA2381-83.  Abbott also urged that the PTO's interpretation of the *inter partes* reexamination statute was correct and entitled to deference, and that the PTO's preference for general rulemaking was permissible in any event.  JA1284-93.  The PTO moved to dismiss and for summary judgment, arguing among other things that its decision was not "final agency action" reviewable under the APA.  JA3601, 3604, 3619-24.

On December 24, 2014, the district court dismissed Cordis's suit.  JA1-3. The PTO's petition decision, it held, was "ancillary to and not dispositive of a final decision on the merits of the still pending *inter partes* reexamination proceedings." JA2.  That lack of final agency action, the court opined, deprived it of jurisdiction over the case—although the court also noted that it would dismiss the action on that ground whether or not the requirement was jurisdictional.   JA2 n.1.

---

Statutory Authority, Control No. 95/000,552 (Jan. 15, 2015).  The PTO denied both petitions. *See* Decision on Petitions, Control No. 95/000,552 (Mar. 23, 2015); Decision on Petitions, Control No. 95/000,552 (Apr. 14, 2015).

Accordingly, the court granted the PTO's motion to dismiss. JA3. In light of that ruling, the court denied Abbott's motion for summary judgment as moot. *Id.*

Cordis appealed. JA3893-94. Abbott cross-appealed the district court's denial of its own motion, so that this Court could address the merits of this long-running dispute if it concludes there is subject-matter jurisdiction. JA3899-900.

## <u>SUMMARY OF ARGUMENT</u>

Cordis and the PTO debate at length whether the PTO's latest decision is "final agency action" reviewable under the Administrative Procedure Act. But the Court need not and should not address that issue. Resolving only that narrow dispute would simply kick the can down the road and encourage Cordis to continue its already interminable campaign of delay.

Instead, the Court should rule as a threshold matter that it lacks subject-matter jurisdiction over this appeal because Cordis cannot show it will derive any benefit from the case-specific rules it seeks. Alternatively, the Court should uphold the PTO's petition rulings on the merits as a correct and reasonable interpretation of the *inter partes* reexamination statute and a permissible exercise of its discretion to prefer general rulemaking over *ad hoc* decisions. Either approach would allow this Court to put an end to Cordis's long-running delay tactics once and for all.

I.    A party invoking federal jurisdiction must show that it is "'likely,' as opposed to merely 'speculative,' that [its] injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Cordis cannot make that showing here.

Cordis asked the PTO for new case-specific discovery and disclosure rules only *after* prosecution in its cases had already concluded and the cases were proceeding on appeal to the Board. In those circumstances, Cordis cannot show that it would derive any benefit from the new rules it seeks. Once a case is on appeal, the record is closed. Cordis thus cannot show that the new rules it seeks would redress the injuries it claims: Even if Cordis obtained additional evidence through discovery, it could not submit that evidence in its cases already on appeal.

Cordis also lacks standing for another reason. Under this Court's decision in *Abbott Laboratories v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013), subpoenas under 35 U.S.C. § 24 are available only "if the PTO's *regulations* authorize parties to take depositions for use in that proceeding." *Id.* at 1328 (emphasis added). That holding requires *regulations*—*i.e.*, generally applicable rules—not the sort of one-off determination Cordis seeks. Thus, even if the PTO promulgated the rules Cordis wants, Cordis could not invoke § 24 to enforce its discovery demands.

II.    Alternatively, the Court should decide the case by assuming that the PTO's decision is reviewable and then rejecting Cordis's APA challenge on the

merits.   When only statutory jurisdiction is at issue, courts can bypass the jurisdictional issue and reject a claim on the merits.  *Minesen Co. v. McHugh*, 671 F.3d 1332, 1337 (Fed. Cir. 2012).  Given the complete lack of merit to Cordis's APA challenge, that is the appropriate course here.

Cordis fails to show that the PTO's construction of the *inter partes* reexamination statute is incorrect, let alone unreasonable.  As the PTO explained, § 314(a) expressly requires that *inter partes* reexaminations be conducted according to initial examination procedures—procedures that ***do not include discovery***.   Congress confirmed that intent in § 314(b) and (c), whose strict statutory deadlines and mandate of "special dispatch" are wholly incompatible with discovery.  Finally, the recent 2011 amendments to the Patent Act confirm that Congress intended to allow discovery where formerly there was none.  The PTO's interpretation was thus irrefutable, and certainly more than sufficient to satisfy the generous reasonableness standard of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The PTO's alternative basis for decision—that discovery and disclosure duties should be imposed through general rulemaking rather than *ad hoc* determinations—was likewise unassailable.  "[A]gency discretion is at its peak in deciding such matters as whether to address an issue by rulemaking or adjudication."  *Am. Gas Ass'n v. FERC*, 912 F.2d 1496, 1519 (D.C. Cir. 1990).

The PTO gave persuasive grounds for preferring the former course here: Rulemaking would allow it to consider the interests of third parties affected by the radical procedural overhaul Cordis seeks, and it would ensure fairness by treating like cases alike rather than singling out Cordis for special treatment.

III.    Cordis's suit thus fails for multiple reasons wholly apart from the finality issue the district court addressed.  There are compelling reasons to resolve this appeal on those alternative grounds.  Like many parties confronting adverse decisions in reexamination, Cordis has sought to delay resolution of the proceedings by filing petition after petition with the PTO and then challenging the PTO's denials of those petitions in court.  Cordis's incessant demands for discovery are all part of that calculated strategy of delay.

A disposition that addresses solely the finality question would effectively reward Cordis for that strategy, either by encouraging it to raise the same arguments in other proceedings or by inviting protracted litigation on remand. This Court should put an end to Cordis's delay tactics once and for all.

## ARGUMENT

## I.    STANDARD OF REVIEW

As to the threshold question of whether this Court has subject-matter jurisdiction, the Court reviews standing determinations *de novo*.  *See Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012);

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 181 (4th Cir. 2013).

As to the merits of the PTO's decisions, the Court applies the deferential standards of the Administrative Procedure Act. The Court may set aside the agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). That standard is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). The court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Defenders of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 396 (4th Cir. 2014).

APA review is especially deferential in the context of an agency's decision not to engage in rulemaking. A court "will overturn an agency's decision not to initiate a rulemaking only for compelling cause, such as plain error of law or a fundamental change in the factual premises previously considered by the agency." *Nat'l Customs Brokers & Forwarders Ass'n of Am., Inc. v. United States*, 883 F.2d 93, 96-97 (D.C. Cir. 1989). This Court's review is "extremely limited" and "highly deferential." *Id.* at 96; *see also Massachusetts v. EPA*, 549 U.S. 497, 527-28 (2007).

## II.    THE COURT LACKS JURISDICTION OVER THIS APPEAL BECAUSE CORDIS CANNOT SHOW IT WOULD DERIVE ANY BENEFIT FROM THE CASE-SPECIFIC RULES IT SEEKS

The Supreme Court has made clear time and again that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" that "limits the jurisdiction of federal courts." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "The party invoking federal jurisdiction bears the burden of establishing [its] elements." *Id.* at 561. Those elements are (1) injury-in-fact; (2) a causal connection to the conduct complained of; and (3) redressability. *Id.* at 560-61. That third element requires a plaintiff to show that it is "***'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'***" *Id.* at 561 (emphasis added); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (injury must be "redressable by a favorable ruling"); *Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480 (4th Cir. 2003).

Standing is a threshold jurisdictional issue that a court must address before proceeding to the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). To decide the merits before deciding standing would "carr[y] the courts beyond the bounds of authorized judicial action and thus offend[] fundamental principles of separation of powers." *Steel Co.*, 523 U.S. at

94. For that reason, the Court must address Cordis's standing before reaching the merits of this dispute.

Nonetheless, Article III does not prescribe a "sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). This Court can therefore decide the standing issue before deciding the "final agency action" issue, whether or not that latter requirement is also jurisdictional. The Court can thus affirm on the alternative ground that Cordis lacks standing, resolving this dispute once and for all. *See El-Sheikh v. United States*, 177 F.3d 1321, 1326 (Fed. Cir. 1999) (court "may affirm a judgment of the trial court on any ground supported by the record"); *Waters v. Merit Sys. Prot. Bd.*, 101 F.3d 716, 1996 WL 663313, at *1 (Fed. Cir. Nov. 15, 1996) (unpublished) (affirming jurisdictional dismissal on alternative jurisdictional ground); *Miller v. Branch, Cabell & Co.*, 103 F.3d 118, 1996 WL 678385, at *1 (4th Cir. Nov. 25, 1996) (unpublished) (same).

The Court therefore need not and should not wade into the dispute over whether the PTO's decision was "final agency action." Cordis lacks standing because it cannot derive any benefit from the case-specific rules it seeks—for multiple reasons.

### A.     Any New Discovery or Disclosure Rules Would Not Apply Retroactively to Cases Like Cordis's That Are Already on Appeal

Cordis cannot show it will derive any benefit from its proposed rules because, by the time Cordis first asked for those rules below, prosecution in its

reexaminations had already closed, and its cases were already proceeding on appeal to the Board. Under settled principles of administrative law, any new discovery or disclosure rules the PTO adopted at that point would not apply to Cordis's proceedings.

Under the PTO's rules, with exceptions not relevant here, "[a]ffidavits or other evidence filed after the date of filing an appeal pursuant to §41.61 **will not be admitted**." 37 C.F.R. §41.63(c) (emphasis added). Cordis's cases were finally decided by the examiners more than **two years** ago. JA2594-97, 3471-73. Yet Cordis failed to ask for new case-specific rules until **after** those cases had already been decided and were proceeding on appeal. JA755-56, 765-67. Consequently, even if Cordis were able to obtain discovery pursuant to the new good-for-this-case-only rule it seeks, Cordis could not use any of the information it obtained in its cases: Under the PTO's rules, the records are already closed.[7]

Simply put, as a result of Cordis's own delay, Cordis can no longer benefit from the new rules it seeks. Cordis is situated no differently from a party to a civil case that loses at trial and then seeks new discovery for the first time on appeal. It

---

[7] 37 C.F.R. §41.63(c) provides a narrow exception for "reopening prosecution under §41.77(b)(1)." But that exception applies only where "the Board makes a new ground of rejection, [and] the owner, within one month from the date of the decision, . . . file[s] a response requesting reopening of prosecution before the examiner." 37 C.F.R. §41.77(b)(1). That exception does not apply here.

is too late. If a party like Cordis wants new case-specific discovery rules, it must seek those rules while the record is still open. Cordis did not do that here.

Cordis's belated demand for new discovery rules also ignores basic principles of non-retroactivity. As the Supreme Court has explained, "[r]etroactivity is not favored in the law," and therefore "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless the power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). "Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant." *Id.* at 208-09. This Court thus routinely denies PTO regulations retroactive effect. *See Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1359 (Fed. Cir. 2001) (declining to "apply a rule change retroactively"); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179 n.8 (Fed. Cir. 1995) (similar).

That Cordis's new discovery or disclosure rules may be "procedural" does not alter that conclusion. The Supreme Court has made clear that even new procedural rules do not apply retroactively to closed cases: "A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and ***the promulgation of a new rule of evidence would not require an appellate remand***

*for a new trial*." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.29 (1994) (emphasis added); *see also Martin v. Hadix*, 527 U.S. 343, 359 (1999) ("We took pains [in *Landgraf*] to dispel the 'sugges[tion] that concerns about retroactivity have no application to procedural rules.'"); *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 880 n.* (Fed. Cir. 1997) (court "properly applied the old [procedural] [r]ules in effect at the time").

The PTO itself has made clear that any new discovery or disclosure rules would not apply retroactively to cases where prosecution was already closed.  In an order denying a related petition that Cordis filed seeking general rulemaking, the PTO reasoned that any rule change would not affect a significant number of cases because "*prosecution will be closed* in all but a few of these *inter partes* reexamination proceedings."  JA2848 (emphasis added).  The PTO thus agrees that, once prosecution is closed, new disclosure and discovery rules would not apply to a proceeding that has advanced to the appeal stage.

Cordis argued below that it need not show redressability because it asserts a "procedural right."  JA3703-04.  But Cordis misunderstands the procedural right doctrine.  Under that doctrine, a party alleging denial of a procedural right need not "'prove that if he had received the procedure the substantive result would have been altered.'"  *Massachusetts*, 549 U.S. at 517-18.  But while "the plaintiff in a procedural-injury case is relieved of having to show that proper procedures would

37

have caused the agency to take a different substantive action, the plaintiff must still show that the agency action was *the cause of some redressable injury to the plaintiff*." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1279 (D.C. Cir. 2007) (emphasis added); *see also Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005) (similar). Here, Cordis lacks standing because, *even if the PTO had granted its rulemaking petition*—the "substantive action" that Cordis was seeking with its petition—Cordis would not derive any benefit from that action. Cordis could not use any new information it obtained in proceedings where the records were already closed.

Cordis also insisted below that the PTO could in fact apply new discovery rules to prosecutions already closed. JA3704. But none of the rules Cordis cited supports that claim. For example, Cordis cited 37 C.F.R. § 41.77, which provides that the Patent Trial and Appeal Board, upon appeal of an examiner's decision, may "affirm or reverse . . . or remand the reexamination proceeding to the examiner for further consideration." 37 C.F.R. § 41.77(a). The mere fact that the Board—like any appellate tribunal—can affirm, reverse, or remand hardly means that the Board may remand *in order to apply new procedural rules retroactively* that did not exist at the time of the examiner's decision. None of the grounds for remand listed in the Manual of Patent Examining Procedure mentions retroactive application of new procedural rules. MPEP § 2682(IV).

Even if it were theoretically possible for the PTO to afford relief, Cordis still has not shown that it is " *'likely,'* as opposed to merely 'speculative,' " that the PTO would exercise that authority in its favor. *Lujan*, 504 U.S. at 561 (emphasis added). The PTO has made clear that "[r]eopening prosecution of a case after decision by the Board"—in *any* circumstance—"should be a *rare occurrence*." MPEP § 2682(IV)(A) (emphasis added). "Rare" is the opposite of "likely." Cordis identifies no reason why the PTO would single out its case—out of the thousands of *inter partes* reexaminations—for special retroactive treatment, even if it had authority to do so. *Cf. Lujan*, 504 U.S. at 568-71 (no redressability where standing depended on speculation about actions of other agencies). For that reason, Cordis fails to establish the standing necessary to support this Court's jurisdiction.

### B.     The Case-Specific Rules Cordis Seeks Would Not Authorize Subpoenas Because They Would Not Make the Reexaminations a "Contested Case"

Cordis also lacks standing for a second reason. Even if the PTO had granted Cordis's request for case-specific authorization to pursue discovery, that decision would not amount to the type of "regulation" this Court held necessary to authorize subpoenas under 35 U.S.C. § 24.

In Cordis's prior appeal, this Court held that subpoenas are available under § 24 only "if the PTO's *regulations* authorize parties to take depositions for use in that proceeding." *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1328 (Fed. Cir.

2013) (emphasis added).  The Court adopted that interpretation based on §24's close relationship with §23, which authorizes the PTO to "establish **rules** for taking affidavits and depositions required in cases in the Patent and Trademark Office."  35 U.S.C. §23 (emphasis added); *see Abbott*, 710 F.3d at 1322-26 (tracing the historical kinship of the two provisions).  The "rules" that §23 refers to are the PTO's generally applicable rules, not individual decisions in particular cases.  That is why, when analyzing whether the PTO's rules authorized depositions in *inter partes* reexaminations, this Court focused exclusively on **generally applicable** regulations.  *See id.* at 1327.  Indeed, this Court referred to the necessary predicate as "regulations" more than a dozen times in its opinion.  *See id.* at 1319-28.

Cordis asserts that the term "rule" includes case-specific rules because the APA defines "rule" to include "an agency statement of general **or particular** applicability."  5 U.S.C. §551(4) (emphasis added).  But that definition applies only "[f]or the purpose of this subchapter," *i.e.*, the APA.  *Id.* §551.  It does not govern the meaning of the term "rule" in §23.

The ordinary and traditional meaning of the term "rule" is a provision of general applicability, not a case-specific determination.  *See* Ronald M. Levin, *The Case for (Finally) Fixing the APA's Definition of "Rule,"* 56 Admin. L. Rev. 1077, 1081-83 (2004) (explaining the origins of the "or particular" language and noting

that it was a departure from the ordinary meaning of the term "rule"); Antonin Scalia, *Vermont Yankee: The APA, the D.C. Circuit, and the Supreme Court*, 1978 Sup. Ct. Rev. 345, 383 (definition is "contrary to the common understanding" of the term). Congress originally enacted § 23 and § 24 during the nineteenth century, long before the APA's revisionist definition in 1946. *See Abbott*, 710 F.3d at 1323 & n.6. At the time, Congress clearly would have understood the term "rule" to bear its ordinary meaning—*i.e.*, a generally applicable regulation. Cordis cited no authority to the contrary below. And it offered no reason to think that Congress meant to rewrite patent statutes passed a century earlier when it enacted a provision that expressly applies solely for purposes of the APA.[8]

Accordingly, even if the PTO had granted Cordis's request, its decision would not have empowered a court to issue subpoenas under § 24. For that reason too, Cordis lacks standing.

## III. ALTERNATIVELY, THE COURT SHOULD AFFIRM BASED ON THE MERITS OF THE PTO'S DECISION

If the Court finds that Cordis does have standing, it should reject Cordis's claims on the merits. As the PTO convincingly explained, the plain text,

---

[8] Cordis claimed below that *Dickinson v. Zurko*, 527 U.S. 150 (1999), mandates a uniform definition for the term "rule." But the only field for which *Zurko* mandated uniformity was "***judicial review*** of administrative action." *Id.* at 154 (emphasis added). Nothing in *Zurko* suggests that the APA unified standards for obtaining subpoenas in aid of agency proceedings—a topic that § 23 and § 24 have long addressed uniquely in the context of the PTO.

legislative history, and purposes of the *inter partes* reexamination statute all confirm that Congress did not intend to allow discovery. Even if there were room for debate—and there is none—the PTO's interpretation is reasonable and entitled to deference. The PTO's alternative ruling was equally sound: Agency discretion is at its peak when deciding whether to proceed by general rulemaking or case-by-case adjudication, and the PTO gave compelling reasons for preferring the former course here. Cordis therefore cannot show that the PTO's decision was arbitrary and capricious, as required to obtain relief under the APA. 5 U.S.C. § 706(2)(A).

As with the standing question, this Court can reach those issues without resolving the dispute over the APA's "final agency action" requirement. "While [this Court is] generally obligated to resolve jurisdictional challenges first, Supreme Court precedent only requires federal courts to answer questions concerning their Article III jurisdiction—not necessarily their statutory jurisdiction—before reaching other dispositive issues." *Minesen Co. v. McHugh*, 671 F.3d 1332, 1337 (Fed. Cir. 2012). The APA's "final agency action" requirement, even if jurisdictional, is statutory rather than constitutional. 5 U.S.C. § 704. The Supreme Court's prohibition on hypothetical jurisdiction therefore does not apply. *See Minesen*, 671 F.3d at 1337.

Accordingly, this Court can assume for the sake of argument that the PTO's action is reviewable under the APA and then reject Cordis's APA challenge on the

merits. *See, e.g.*, *Oliva v. U.S. Dep't of Justice*, 433 F.3d 229, 232 (2d Cir. 2005) (rejecting claim on the merits despite failure to exhaust before the agency because "the exhaustion question raises an issue of statutory, not constitutional, jurisdiction"). Alternately, if the Court decides that the PTO's decision is reviewable under the APA, it should proceed to address Cordis's challenge on the merits and reject it. Those approaches would avoid needless further proceedings and delay by conclusively rejecting Cordis's claims at this juncture.

### A.    The PTO Correctly Ruled That the *Inter Partes* Reexamination Statute Prohibits Discovery

The PTO properly determined that the *inter partes* reexamination statute prohibits discovery. At the very least, the PTO's interpretation is reasonable and entitled to deference.

### 1.    *The PTO's Interpretation of the Statute Is Correct*

The PTO correctly concluded that the plain language of the *inter partes* reexamination statute precludes discovery. As the PTO explained, "35 U.S.C. 314 prescribes the procedure for the conduct of *inter partes* reexamination proceedings." JA750. Section 314(a) provides that, "[e]xcept as otherwise provided in this section, reexamination shall be conducted ***according to the procedures established for initial examination*** under the provisions of sections 132 and 133." 35 U.S.C. § 314(a) (emphasis added). Congress thus intentionally modeled *inter partes* reexaminations on initial examination procedures. *See In re*

*NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011) ("Reexamination proceedings are intended to have the same focus as original prosecution and are procedurally similar." (citations omitted)).

As the PTO further observed, "35 U.S.C. 132 and 133, which govern initial examination, ***do not provide for a discovery practice***." JA750 (emphasis added). Indeed, the whole concept of discovery is foreign to initial examinations. Those proceedings are examinational rather than adjudicative; they are conducted before examiners with technical backgrounds rather than administrative law judges with legal backgrounds like the members of the Patent Trial and Appeal Board. *Compare* 37 C.F.R. §§ 1.104, 1.937(b), *with* 35 U.S.C. § 6(a). This Court thus explained in Cordis's earlier appeal:

> The PTO regulations make ***no provision for the taking of depositions in proceedings before examiners***. Depositions are allowed only in matters before the Board. . . . The only PTO regulations providing for depositions in patent proceedings apply exclusively to interferences, derivation proceedings, and the new Board proceedings created by the AIA.

*Abbott*, 710 F.3d at 1327 (emphasis added). Because discovery is not one of the "procedures established for initial examination," it is not available in *inter partes* reexaminations under § 314(a).

The PTO also correctly relied on other provisions of § 314 to confirm that Congress did not intend to permit discovery. First, § 314(b) imposes a strict 30-day deadline for a third-party requester to respond, which cannot be extended. 35

U.S.C. §314(b); 37 C.F.R. §1.947.    As the PTO explained, "it would be impracticable, if not impossible, for the parties to conduct discovery, for the court to resolve any discovery disputes, and for the third party requester to prepare and submit its written comments within the thirty-day period set by statute."  JA750.

Discovery would also thwart §314(c)'s mandate that *inter partes* reexaminations be "conducted with special dispatch."  35 U.S.C. §314(c).  As the PTO explained, "[a]ny provision for discovery would necessarily prolong proceedings before the Office."  JA751.  "[T]he statutory requirement for special dispatch clearly provides evidence that Congress did not contemplate discovery for *inter partes* reexamination proceedings."  *Id.*

The PTO found further support in the statute's legislative history.  That history, it noted, "makes no mention of discovery, and consistently expresses a concern for providing a low-cost, efficient alternative to litigation."  JA751; *see, e.g.*, 145 Cong. Rec. H6944 (Aug. 3, 1999) (Rep. Rohrabacher) (JA2414) (stating intent to "[r]esolve patent validity disputes more quickly and less expensively than litigation" by avoiding a process "resembling courtroom proceedings").  The PTO also cited its 2004 Report to Congress, which noted that "'the lack of such procedural mechanisms as discovery and cross-examination'" in *inter partes* reexaminations had "'apparently resulted in challengers being unwilling to

invoke'" the process. JA752 (quoting U.S. Patent & Trademark Office, *Report to Congress on Inter Partes Reexamination* 4 (2004) (JA2431)).

The PTO also relied on the recent revisions to the Patent Act. "The America Invents Act," it explained, "replaces *inter partes* reexamination with a new proceeding titled *inter partes* review," which "expressly provides for discovery." JA752. "The legislative history of the new proceeding confirms that Congress intended to provide discovery where none had previously been available." *Id.*; *see* H.R. Rep. No. 112-98, at 47 (2011) (A2513) (specifically identifying "[d]iscovery" as a departure from current law).[9]

Finally, the PTO explained that its construction was fully consistent with this Court's decision in *Abbott*. JA3770. *Abbott* held that § 24 does not authorize subpoenas in *inter partes* reexaminations because that statute applies only where the PTO's regulations permit discovery. 710 F.3d at 1328. Having concluded that § 24 does not authorize subpoenas, this Court had no reason to reach—and did not reach—the separate question of whether the ***inter partes reexamination statute*** prohibits discovery. The PTO's determination that "discovery in an *inter partes*

_____

[9] Even in the new *inter partes* review proceedings, discovery is limited to "the deposition of witnesses submitting affidavits or declarations" or other matters the PTO deems "necessary in the interest of justice." Current 35 U.S.C. § 316(a)(5). The sprawling discovery that Cordis seeks here thus would not be permitted even under that new regime. JA631-43.

reexamination proceeding is not permitted by the *inter partes* reexamination statute" was therefore fully consistent with this Court's decision. JA3770.

The PTO's interpretation was thus solidly grounded in the statute. Indeed, Cordis's own parent company has previously agreed with that interpretation. In 2006, Johnson & Johnson's Chief Patent Counsel testified on behalf of his company before Congress that "***discovery is not permitted***" in *inter partes* reexaminations because they are "limited proceedings intended only to evaluate the impact of [prior art patents and publications] on a patent's validity." JA2501, 2505 (emphasis added). Cordis's own litigation counsel in this very case has likewise stated in an article that discovery is not permitted. JA3844, 3847 (explaining that *inter partes* review "will feature discovery . . . in contrast to the current inter partes re-examination system"). That Cordis and its counsel do not even believe their own position makes it hard to credit their arguments.

### 2. *The PTO's Interpretation Is Entitled to Deference*

Even if the *inter partes* reexamination statute were ambiguous—and it is not—the Court should defer to the PTO's interpretation as a reasonable construction of the statute. Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), this Court must defer to an agency's interpretation of the statute it administers so long as the interpretation is not contrary to Congress's clearly expressed intent and is a reasonable construction of

the statute. *Id.* at 842-43; *see United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). The PTO's decision easily meets that standard.

*Chevron* applies whenever Congress has delegated authority to an agency to interpret a statute and the agency acts through formal administrative procedures. *See Chevron*, 467 U.S. at 844-46; *Mead*, 533 U.S. at 229-30. Here, Congress granted the PTO authority to interpret the statutes governing its procedures, including the *inter partes* reexamination statute. *See* 35 U.S.C. §§ 2(b)(2), 23; *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335-37 (Fed. Cir. 2008) (applying *Chevron* deference to interpretation of *inter partes* reexamination statute). The PTO's petition decisions represent the agency's authoritative construction reached through a formal adjudicative process. 37 C.F.R. § 1.182. Those decisions are therefore entitled to *Chevron* deference. *See, e.g.*, *Automated Merch. Sys., Inc. v. Rea*, 45 F. Supp. 3d 526, 534 (E.D. Va. 2014) (granting *Chevron* deference to PTO petition decision), *aff'd on other grounds*, 782 F.3d 1376 (Fed. Cir. 2015).

The PTO's interpretation readily satisfies *Chevron*. Congress certainly has not **mandated** discovery in the *inter partes* reexamination statute. And the PTO's interpretation of the statute to preclude discovery is eminently reasonable.

The PTO reasonably construed § 314(a)'s reference to initial examination procedures to mean there would be no discovery in *inter partes* reexaminations either. JA750. The PTO also reasonably drew guidance from § 314(b) and (c),

48

concluding that discovery would conflict with the strict statutory deadlines and mandate of special dispatch. JA750-51. Importantly, that analysis reflected not only the agency's interpretation of the statutory text but also its expert and experienced judgment about the practical impact of importing discovery into proceedings where it had never been employed before. Finally, the PTO confirmed its construction with a careful analysis of the legislative history and subsequent amendments. JA751-52.

That analysis was more than sufficient to satisfy *Chevron*'s reasonableness requirement. Even if the *inter partes* reexamination statute were ambiguous, *Chevron* would require this Court to uphold the agency's interpretation.[10]

### B.    The PTO Rationally Concluded That Discovery and Disclosure Duties Should Not Be Imposed on a Case-by-Case Basis

Apart from its determination that the *inter partes* reexamination statute prohibits discovery, the PTO also relied on a second, independent rationale to deny Cordis's request. "[R]ules regarding discovery and the duty of candor in *inter partes* reexaminations," it concluded, should not be "adopted through case-by-case

---

[10] At a minimum, the PTO's interpretation is entitled to substantial deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Bayer AG v. Carlsbad Tech., Inc.*, 298 F.3d 1377, 1381 (Fed. Cir. 2002). Under *Skidmore*, a decision that does not qualify for *Chevron* deference still merits deference according to "the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Mead*, 533 U.S. at 228 (footnotes omitted). Where those factors favor deference, the agency's decision is entitled to "great respect." *Id.* All of those factors favor deference here.

adjudication." JA3771. The PTO gave two reasons. First, "in case-by-case adjudication, the Office will only have the input of two parties." *Id.* And second, "the Office believes, based on its experience and expertise, that it is impractical and unfair to participants to set rules for *inter partes* reexamination proceedings on an *ad hoc* basis." *Id.*

The PTO's decision to proceed by general rulemaking rather than case-by-case adjudication was a paradigmatic exercise of the agency's discretion. And it provides yet another ground for rejecting Cordis's claims.

### 1. *Agencies Have Broad Discretion Over Whether To Proceed by Generally Applicable Rules Rather Than Case-Specific Determinations*

"[I]t is a basic principle of administrative law that 'the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency.'" *Gao v. Holder*, 595 F.3d 549, 556 (4th Cir. 2010) (quoting *SEC v. Chenery Corp*, 332 U.S. 194, 203 (1947)); *see also FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 808 n.29 (1978) (agency had "substantial discretion as to whether to proceed by rulemaking or adjudication"); *Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442, 1447 (D.C. Cir. 1984) ("It is hornbook administrative law that the choice of proceeding by individual adjudication or general rulemaking lies largely within the agency's discretion."). Indeed, "agency discretion is at its peak

in deciding such matters as whether to address an issue by rulemaking or adjudication." *Am. Gas Ass'n v. FERC*, 912 F.2d 1496, 1519 (D.C. Cir. 1990).

Courts have recognized multiple advantages of general rulemaking over case-specific determinations:

> Rulemaking permits more precise definition of statutory standards than would otherwise arise through protracted, piecemeal litigation of particular issues. It allows all those who may be affected by a rule an opportunity to participate in the deliberative process, while adjudicatory proceedings normally afford no such protection to nonparties. And because rulemaking is prospective in operation and general in scope, rather than retroactive and condemnatory in effect, interested parties are given advance notice of the standards to which they will be expected to conform in the future, and uniformity of result is achieved.

*Trans-Pac. Freight Conference of Japan/Korea v. Fed. Mar. Comm'n*, 650 F.2d 1235, 1245 (D.C. Cir. 1980). Given those advantages, courts have encouraged agencies to proceed by rulemaking whenever possible: "The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future." *Chenery*, 332 U.S. at 202; *see also Shays v. Fed. Election Comm'n*, 511 F. Supp. 2d 19, 25 (D.D.C. 2007) ("[R]egulation through rulemaking is preferable where possible.").

Those virtues of generalized rulemaking apply with full force here. At a minimum, the PTO did not abuse its discretion by taking that preferred path. Cordis has failed to cite a single case where a court has ever set aside an agency

decision on the ground that the agency should have proceeded by case-specific determinations rather than general rules. This case should not be the first.

### 2. *The PTO Rationally Concluded That the Availability of Discovery Should Not Be Determined Case by Case*

The PTO gave two grounds for concluding that the availability of discovery should be addressed through generalized rulemaking. First, "in case-by-case adjudication, the Office will only have the input of two parties." JA3771. That was a sound rationale. Rulemaking "allows all those who may be affected by a rule an opportunity to participate in the deliberative process, while adjudicatory proceedings normally afford no such protection to nonparties." *Trans-Pacific*, 650 F.2d at 1245. Broader participation increases the information available to the agency and ensures that the interests of affected third parties are considered.

Those third-party interests are particularly important here. As the PTO explained, discovery would "necessarily prolong proceedings before the Office." JA751. Discovery thus would affect not only the parties to the specific proceeding, but also others with matters pending before the PTO who would be harmed by any reallocation of agency resources, as well as the broader public's interest in obtaining prompt resolution of a patent's validity.

The PTO also "believe[d], based on its experience and expertise, that it is impractical and unfair to participants to set rules for *inter partes* reexamination proceedings on an *ad hoc* basis." JA3771. That ground was likewise persuasive.

"[B]ecause rulemaking is prospective in operation and general in scope, rather than retroactive and condemnatory in effect, interested parties are given advance notice of the standards to which they will be expected to conform in the future, and uniformity of result is achieved." *Trans-Pacific*, 650 F.2d at 1245. By insisting that an issue as fundamental as the availability of discovery be addressed through rules of general applicability, the PTO helped ensure that parties would have notice of the rules that would govern their proceedings and helped avoid inconsistent treatment of similarly situated parties.

Cordis's claim for special treatment is especially weak. This case involves only run-of-the-mill non-obviousness arguments. The same arguments for discovery that Cordis asserts could be raised in any other reexamination—or indeed any initial examination where obviousness is at issue. While Cordis cites case law for the proposition that secondary considerations must always be considered, Cordis Br. 42-43, that line of argument is fatal to Cordis's demand for special treatment: It would justify discovery in ***every*** *inter partes* reexamination— as well as every *ex parte* reexamination and every initial examination. Cordis fails to explain why Abbott should be subject to unique discovery obligations that have never applied to any other *inter partes* reexamination or any other examination in the history of the PTO.

### 3. *The PTO Rationally Concluded That Disclosure Duties Should Not Be Addressed Case by Case*

The PTO also reasonably invoked those same interests in participation, fairness, and practicality in deciding not to impose disclosure duties on a case-by-case basis. As with discovery, disclosure duties are more appropriately addressed through rules of general applicability.

As an initial matter, it is important to stress the novelty of the rule Cordis seeks. *All* parties practicing before the PTO already have an affirmative duty of candor to ensure that their submissions are truthful and supported by evidence. That duty requires parties to assure that "[a]ll statements made [in a submission] of the party's own knowledge are true," that "all statements made on information and belief are believed to be true," that "[t]he allegations and other factual contentions have evidentiary support," and that "[t]he denials of factual contentions are warranted on the evidence." 37 C.F.R. § 11.18(b)(1), (2)(iii)-(iv). Abbott takes those duties very seriously and has fully complied with them here.

Cordis, however, wants more. Cordis asked the PTO to impose a rule requiring Abbott to disclose "*all information* of which [it is] aware that is *material to reexamination of the instant patent*." JA765 (emphasis added). Cordis thus sought to impose wide-ranging, burdensome disclosure obligations on Abbott that would go far beyond merely requiring Abbott to be truthful and forthright in its submissions to the PTO.

54

Like discovery obligations, those new duties would have a significant impact on third parties whose perspective should be considered. *Trans-Pacific*, 650 F.2d at 1245. Broad disclosure duties often lead to a "document dump" as parties bury the PTO with all conceivably relevant materials. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) (noting that disclosure duties had led patent prosecutors to "bury PTO examiners with a deluge of prior art references, most of which have marginal value," and that "[t]his tidal wave of disclosure makes identifying the most relevant prior art more difficult"). The consequences include "strained PTO resources, increased PTO backlog, and impaired patent quality." *Id.* at 1290. Third parties should have the chance to weigh in before those wide-ranging systemic harms are inflicted on the public at the behest of an individual litigant like Cordis.

Likewise, the PTO's interests in fairness and practicality favor a uniform duty. *Trans-Pacific*, 650 F.2d at 1245. It is unfair and impractical to impose disclosure duties—and all the burdens and expense they entail—on some third-party requesters but not others. The pedestrian secondary consideration arguments that Cordis makes here could be made equally well in any other case—including Cordis's baseless speculation that an alleged infringer copied its products. Cordis cannot explain why Abbott, alone out of all third-party requesters, should be singled out for onerous disclosure duties.

The PTO was thus on solid ground denying Cordis's request for special treatment. No less than its demands for discovery, the new disclosure duties Cordis sought would fundamentally transform *inter partes* reexaminations, inflicting massive new costs and obligations on third-party requesters. The PTO reasonably concluded that such fundamental departures from settled practice should not be undertaken on a case-by-case basis.

## IV. THE COURT SHOULD DECIDE THIS APPEAL BASED ON THE ARGUMENTS ABBOTT PRESENTS RATHER THAN FURTHER DELAYING RESOLUTION OF THE DISPUTE

For all the foregoing reasons, Cordis's APA challenge is doomed to fail on multiple grounds. The Court should put an end to this "reexamination discovery" dispute now by adopting the alternative grounds set forth above. Deciding only the narrow finality issue that the district court resolved would only prolong these proceedings and encourage Cordis to persist in its strategy of delay.

As explained above, the *inter partes* reexamination statute creates natural incentives for patent owners confronting adverse decisions in reexamination to delay those proceedings so that parallel litigation will finish first, rendering the reexamination moot. *See* pp. 6-7, *supra*. One way to accomplish that delay is to bombard the PTO with endless petitions in an effort to tie up the reexaminations. That all-too common tactic was highlighted in recent congressional hearings. As one witness reported:

> [A]s to the delay, I think possibly one thing that the Committee could look at is whether—***I know that the Patent Office has been complaining in inter partes reexam of largely the patent owners filing what are really frivolous petitions which delay the proceeding and keep the proceeding [from] advancing through the Patent Office***.  And that may be one place where you could put limitations, because I don't believe—at least my current reading of the rules—is they're not permitted to do that.

*Crossing the Finish Line on Patent Reform: What Can and Should Be Done: Hearing Before the Subcomm. on Intellectual Property, Competition, and the Internet of the H. Comm. on the Judiciary*, 112th Cong. 50-51 (Feb. 11, 2011) (Intel Associate General Counsel David Simon) (emphasis added).   Another witness similarly explained:

> [L]ast week I was talking with the Patent Office director, Dave Kappos, and he was speaking to me about, you know, at times with these—***especially with inter partes re-examination, they receive petition after petition after petition and at this point they don't feel like they have the power to enact rules that stop that***.

*Review of Recent Judicial Decisions on Patent Law: Hearing Before the Subcomm. on Intellectual Property, Competition, and the Internet of the H. Comm. on the Judiciary*, 112th Cong. 53-54 (Mar. 10, 2011) (law professor Dennis Crouch).

That is exactly what Cordis has been doing here.  Cordis's experienced litigation counsel obviously understood that the protective orders they were signing in New Jersey would prohibit them from submitting discovery materials to the PTO—indeed, when Cordis agreed to the last of the three protective orders, the reexaminations were already underway.  JA2686.  Nonetheless, Cordis has now

been seeking to do precisely that for six years, in virtually every forum one could imagine, delaying the reexaminations at every turn. Cordis asked the PTO for permission to submit Abbott's confidential documents. JA2738-39. It asked the New Jersey court for permission. JA2745. It brought an APA challenge to the PTO's rules. JA2769-71. It served subpoenas on Abbott and then litigated the motion to quash all the way to this Court. JA631; *Abbott*, 710 F.3d at 1328. It petitioned the PTO Director for permission to take discovery. JA622. It asked the PTO to promulgate new case-specific rules authorizing discovery. JA756. It is now challenging the PTO's ruling in this appeal. JA71. And most recently, it has sought permission to take discovery from the Board itself. *See* pp. 26-27 n.6, *supra*. Cordis simply will not take "no" for an answer.

As the PTO aptly put it to the court below: "Cordis has sought to delay proceedings through numerous lawsuits challenging the USPTO's discovery regulations and rulings." JA3624. "Cordis . . . seeks nothing more than to delay proceedings further, which appears to be one of Cordis' main objectives." JA3636.

Disposing of this appeal solely on the finality ground would effectively reward Cordis for those delay tactics. If the Court affirms on the ground that the PTO's decision was not final, the Court would merely encourage Cordis to raise the same arguments yet again in other proceedings—despite their complete lack of substantive merit. Similarly, if the Court reverses the district court's finality ruling

but remands for further proceedings in the district court, the Court would be consigning Abbott to more delay as the parties litigated those issues below.

The Court should not condone Cordis's delay tactics by deciding the case in a way that would only further protract the proceedings. This Court has repeatedly recognized that, where "the issues on appeal are legal, not factual," this Court is "fully capable" of resolving a dispute, even where the district court has not yet weighed in. *Shinyei Corp. of Am. v. United States*, 524 F.3d 1274, 1284 n.3 (Fed. Cir. 2008). In *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576 (Fed. Cir. 1988), for example, this Court reversed a finding of literal infringement and then decided the doctrine of equivalents in the first instance, seeing "no need to remand to the district court." *Id.* at 1582. And in *Falkner v. Inglis*, 448 F.3d 1357 (Fed. Cir. 2006), this Court held that the Board had misapplied the written description requirement but refused to remand because "undisputed testimony" supported its ultimate conclusion. *Id.* at 1365; *see also Am. Signature, Inc. v. United States*, 598 F.3d 816, 825 (Fed. Cir. 2010).

"[T]he decision to remand is governed by important policy considerations involving the management of scarce judicial resources." *Wall v. Kreamer*, 41 U.S.P.Q.2d 2022, 1997 WL 243480, at *2 (Fed. Cir. Jan. 21, 1997) (unpublished). Courts have thus refused to remand where considerations of delay make further proceedings inequitable. *See id.* (refusing to remand due to "equitable

circumstances," including the fact that the appeal had already been pending for nearly a year and a half); *Dep't of Energy v. Hunt*, 798 F.2d 1421, 1424-25 (Temp. Emer. Ct. App. 1986) (declining to remand "for another round of adjudication, to be followed inevitably by further review in the district court, in this Court, and possibly in the Supreme Court").

It is time for this reexamination discovery dispute to come to an end. Cordis has burdened the PTO, the federal courts, and Abbott with this issue for far too long. All the arguments that Abbott raises are pure legal questions that can be decided without any prior input from the district court. All of them are either alternative jurisdictional grounds for dismissal or merits dispositions properly before the Court under principles of hypothetical jurisdiction. *See Minesen*, 671 F.3d at 1337; pp. 34, 42-43, *supra*. Most important, Abbott's arguments will put an end to Cordis's delay tactics once and for all. This game of "whack-a-mole" has gone on long enough. The Court should decide the case based on Abbott's alternative grounds rather than the finality issue decided below.

## **CONCLUSION**

The district court's judgment should be affirmed.


June 22, 2015                                  Respectfully submitted,


                                               ___/s/ Michael A. Morin_____

Jeffrey A. Lamken                              Michael A. Morin
Robert K. Kry                                  LATHAM & WATKINS LLP
MOLOLAMKEN LLP                                 555 11th Street NW
The Watergate, Suite 660                       Washington, D.C. 20004
600 New Hampshire Ave., N.W.                   (202) 637-2298
Washington, D.C. 20037
(202) 556-2000                                 Andrew J. Vance
                                               FINNEGAN, HENDERSON, FARABOW,
                                                  GARRETT & DUNNER, L.L.P.
                                               901 New York Ave., N.W.
                                               Washington, D.C. 20001
                                               (202) 408-4465

*Attorneys for Defendant-Cross-Appellant*
*Abbott Laboratories*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 22, 2015, I electronically filed the foregoing Brief for Defendant-Cross-Appellant Abbott Laboratories using the Court's CM/ECF filing system.  All counsel registered with the Court's CM/ECF system were served by operation of that system on that same date.

　　　　　　　　　　　　　　 /s/ Michael A. Morin
　　　　　　　　　　　　　　 Michael A. Morin

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

 X   this brief contains 13,913 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b), or

_____ this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X   this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font, or

_____ this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

      /s/ Michael A. Morin
      Michael A. Morin